## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 10- 22150-Civ-COOKE/TURNOFF

PATRICIA CLARK CUSWORTH,

     Plaintiff

v.

AMERICAN AIRLINES, INC.,

     Defendant.

_____/

### <u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

THIS MATTER is before me on Defendant's Motion for Summary Judgment (ECF No. 56). I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons provided below, the Defendant's Motion is granted.

### I. BACKGROUND

This is a wrongful termination, discrimination, and retaliation action arising from Plaintiff's termination as a flight attendant.[1] Plaintiff, Patricia Clark Cusworth, filed a two-count complaint against Defendant, American Airlines, Inc. ("American"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (2010) ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (2010). On July 29, 2011, I dismissed Ms. Cusworth's Title VII claims with prejudice. (Order Granting Def.'s Mot. for Partial Judgment on the Pleadings, ECF No. 66). Only Ms. Cusworth's 42 U.S.C. § 1981 claims remain.

---

[1] Count I of the Complaint also asserts that American "terminated Plaintiff for numerous promotions and failed to promote her because of her race, black, and because of her age," which would appear to set forth a failure to promote claim. However, on September 22, 2011, the parties stipulated that Count I is not based on a failure to promote. (ECF No. 78).

The following facts are undisputed unless otherwise noted.[2]  American is an air carrier subject to U.S. Department of Transportation ("DOT") and Federal Aviation Administration ("FAA") regulations.  DOT and FAA regulations require random alcohol testing for flight attendants.  American has adopted a DOT-compliant and approved alcohol-testing program.  A computer program randomly selects employees, including flight attendants, for alcohol testing.

American employed Ms. Cusworth as a flight attendant from March 15, 1990, until around August 8, 2007.  Ms. Cusworth is an African-American female, who is over forty years old.  On July 10, 2007, Ms. Cusworth returned to American's Miami, Florida terminal following an international flight.  Upon her return, American informed Ms. Cusworth that she had been randomly selected for drug and alcohol testing.

Ms. Cusworth proceeded to American's Medical Department for testing.  Sylvia Lloyd, a registered nurse, administered the alcohol test.  Ms. Lloyd utilized an "Alco Sensor" machine for testing, which requires the employee to blow into the device for a sustained period of time.  The machine analyzes the alcohol content in the breath expelled.  If the employee provides an adequate breath sample, the Alco Sensor provides an alcohol-content reading.  If the employee does not provide sufficient breath, the device will report a "NoGo."

When Ms. Cusworth came into the examination room, she advised Ms. Lloyd that she had had "chest wall pain" approximately twenty-two days before.  Ms. Lloyd acknowledged this fact, and proceeded to administer the alcohol test.  She instructed Mr. Cusworth to blow into the Alco Sensor device.  The Alco Sensor returned a "NoGo" reading.

---

[2] The facts set forth in Defendant's Statement of Material Facts are deemed admitted to the extent that they are supported by evidence in the record, and are not specifically disputed in Plaintiff's opposing statement of facts.  S.D. Fla. L.R. 7.5(D); *see also Gossard v. JP Morgan Chase & Co.,* 612 F. Supp. 2d 1242, 1245-1246 (S.D. Fla. 2009).

According to 49 C.F.R. § 40.265, if an employee does not provide sufficient breath, the person administering the test "must instruct the employee to attempt again to provide a sufficient amount of breath and about the proper way to do so."  Accordingly, Ms. Lloyd told Ms. Cusworth to try again, and blow into the device "like you're blowing up a balloon or blowing out birthday candles."  Ms. Cusworth attempted to blow into the machine two more times; both attempts resulted in a "NoGo" reading.  Because Ms. Cusworth was unsuccessful in providing a sufficient amount of breath after three attempts, American categorized her as having "shy lung."

After the test, Ms. Cusworth provided Ms. Lloyd with documentation from the Del Sol Medical Center in El Paso, Texas, indicating that she had chest wall pain on June 18, 2007.  Ms. Lloyd completed an alcohol testing form stating that Ms. Cusworth had failed to provide sufficient breath and noting her prior medical visit regarding chest wall pain.  She then faxed the form to an American representative in Dallas, Texas.  Ms. Lloyd also contacted the on-site physician, Dr. Fanancy Anzalone.

American withheld Ms. Cusworth from duty with pay until she could undergo a follow-up independent medical evaluation, as required under 49 C.F.R. § 40.265(c).  Pursuant to § 40.265(c), when an employee fails to provide sufficient breath, the employer "must direct the employee to obtain, within five days, an evaluation from a licensed physician."  Thus, pursuant to this regulation, Ms. Cusworth had to obtain an evaluation by July 15, 2007.

Sometime after taking the alcohol test, Ms. Cusworth obtained permission from her supervisor, Janet Van Halm, to travel to Atlanta to be with her mother, who was terminally ill. On July 15, 2007, her mother passed away.  At some point after July 15, 2007, Ms. Van Halm apparently informed Ms. Cusworth that American was placing her on unpaid status.[3]  Ms.

---

[3] This turned out to be incorrect.  American continued to pay Ms. Cusworth up until her termination on August 8, 2007.  (Lee Decl. ¶ 3-4, ECF No. 64-1).

Cusworth contacted Dr. Anzalone, who informed her that she had to undergo a follow-up examination. Ms. Cusworth asked if the examination could take place after her mother's funeral. Dr. Anzalone set up an appointment for July 25, 2007.

On July 25, 2007, fifteen days after her initial alcohol test, a licensed physician, Dr. Susan Diaz, examined Ms. Cusworth to determine whether a medical condition precluded her from providing sufficient breath. Dr. Diaz conducted a chest x-ray, tomography, and other pulmonary function tests. (ECF No. 60-2, at 55). There is evidence that Dr. Diaz also reviewed Ms. Cusworth's medical records from her visit to Del Sol Medical Center. (ECF No. 60-2, at 52). Pursuant to 49 C.F.R. § 40.265(c)(1)(iv), Dr. Diaz determined that "[t]here [was] not an adequate basis for determining that a medical condition has, or with a high degree of probability could have, precluded [Ms. Cusworth] from providing a sufficient amount of breath." (ECF No. 60-2, at 55). Dr. Anzalone agreed with Dr. Diaz's evaluation, and transmitted her report and his concurrence to American. American subsequently categorized Ms. Cusworth's exam results as stemming from a "refusal to test" pursuant to 49 C.F.R. § 40.265(c)(1)(iv)(B). Ms. Cusworth argues that her situation qualified as a "cancelled test" pursuant to 49 C.F.R. § 40.265(b).

Pursuant to 49 C.F.R. § 40.265(c)(3), upon receipt of a report from a licensed physician indicating a "refusal to test," an employer "must immediately inform the employee and take appropriate action based upon [its] DOT agency regulations." According to its policies, American treats a "refusal to test" as an act of insubordination in violation of American's Rule of Conduct No. 7. A sanction for violating Rule of Conduct No. 7 is immediate termination. American alleges that such insubordination—stemming from refusals to test—always result in termination.

4

On around August 8, 2007, American terminated Ms. Cusworth.  Shannon Lalley, Manager of American's Drug and Alcohol Programs, and Rosario Vela, American's Drug and Alcohol Administrator, terminated Ms. Cusworth.[4]  Both averred that, at the time of Ms. Cusworth's termination, they did not know her race or age.

On December 18, 2007, Ms. Cusworth filed a charge of discrimination based on race and age with the Equal Employment Opportunity Commission ("EEOC").  On around September 29, 2008, the EEOC issued Ms. Cusworth a Notice of a Right to Sue Letter.

On February 26, 2010, Ms. Cusworth filed a complaint in the Third Judicial District for Dona Ana County, New Mexico, alleging wrongful termination based on race or age, in violation 42 U.S.C. § 1981, and discrimination and retaliation based on race and age, in violation of Title VII and § 1981.  On April 27, 2010, American removed the case to the United States District Court for the District of New Mexico.  On June 28, 2010, the district court transferred the case to this Court.  As noted above, on July 29, 2011, I dismissed Ms. Cusworth's Title VII claims with prejudice because they are time barred.  Therefore, only Ms. Cusworth's 42 U.S.C. § 1981 claims remain.

## II. LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  "The moving party bears the initial burden to

---

[4] The parties dispute whether Ms. Lalley and Ms. Vela were the sole employees responsible for the decision to terminate.  Although it appears that at least two other supervisors—Ms. Van Halm and Eric Roig, a Miami-based manager—were generally aware of the specifics of Ms. Cusworth's case, there is no evidence that Ms. Van Halm or Mr. Roig terminated her.

show the district court . . . that there is no genuine issue of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. DISCUSSION

### A. <u>Discrimination Claims Based on Age and Race</u>

#### 1. Age Discrimination Claims

In Counts I and II of her Complaint, Ms. Cusworth claims that American discriminated against her based on age, in violation of § 1981. Section 1981, however, does not protect an employee from age discrimination. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (defining scope of § 1981 claim); *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 290 (S.D.N.Y. 2005) ("§ 1981 is concerned only with discrimination on the basis of race . . .."). As Ms. Cusworth cites no other applicable statute in her Complaint that supports a timely age discrimination cause of action, her age discrimination claims are dismissed.

#### 2. Race Discrimination Claims

In Counts I and II of her Complaint, Ms. Cusworth claims American discriminated against her, and wrongfully terminated her, because of her race, in violation of § 1981.[5] To defeat a motion for summary judgment, a plaintiff must establish a prima facie discrimination case by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting statistical proof; or (3) presenting evidence to satisfy the

---

[5] A court analyzes § 1981 claims under the same requirements of proof and analytical framework as Title VII claims. *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1325 n.14 (11th Cir. 2011).

four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

Direct evidence is "evidence[] that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations omitted). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* (internal quotations omitted).

Ms. Cusworth does not present direct evidence or statistical proof of discrimination. I will therefore analyze her claim under the *McDonnell Douglas* framework. *See Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of employment discrimination by showing: (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside her protected class more favorably; and (4) she is qualified to do the job. *Id.*

An employee is similarly situated for purposes of establishing a prima facie case, when the employee is "involved in or accused of the same or similar conduct and [is] disciplined in different ways." *Id*. "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (quotation and citation omitted). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holified*, 115 F.3d at 1562.

If the plaintiff meets this initial burden, "the defendant must show a legitimate, non-discriminatory reason for its employment action." *Burke-Fowler*, 447 F.3d at 1323. If the

defendant does so, "then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id.*

It is undisputed that Ms. Cusworth satisfies elements one, two, and four under the *McDonnell Douglas* test.  Mr. Cusworth is in a protected class—she is African American. American subjected her to an adverse employment action when it terminated her in August 2007. None of the parties dispute that Ms. Cusworth was qualified to be a flight attendant.

To satisfy the third prong of the *McDonnell Douglas* test, Ms. Cusworth must show that American treated similarly situated employees outside of her protected class more favorably.  A proper comparator in this case would be a non-African-American flight attendant (or other airline employee in a safety-sensitive position), who American selected for a random drug and alcohol test and categorized as a "refusal to test" for failure to provide sufficient breath, and a licensed physician later found that the employee did not have a medical condition that would have precluded him or her from providing sufficient breath.

In her Complaint, Ms. Cusworth states that she "is aware of other flight attendants, outside of her protected class, that have failed the drug/alcohol test but were not terminated." (Compl. ¶ 7).  During her deposition, Ms. Cusworth identified several employees she believed were similarly situated.  However, Ms. Cusworth's knowledge about those cases was based only on hearsay and rumors; she could not provide any specific information about those persons' particular circumstances.  In her Response to American's Motion for Summary Judgment, after having the benefit of discovery, Ms. Cusworth identified two flight attendants who she claims American categorized as a "refusal to test" but did not terminate or reinstated—Patti Amos and Kim Reedy.  (*See* Pl.'s Statement of Facts ¶ 49).

Ms. Cusworth, through deposition testimony, provides the following information with respect to Ms. Amos:

> Q.  And do you know Patti Amos?
> A.  No.
> Q.  What do you know about her?
> A.  That she refused to take the test.
> Q.  How do you know that she refused to take the test?
> A.  Rumor mill.
> Q.  And, actually, you have on here "supposedly refused to take the test."  Is that accurate?
> A.  Yes.
> Q.  Do you know what her age and race are?
> A.  No.
> Q.  And do you know what happened to her after she supposedly refused to take the test?
> A.  No.

(Cusworth Dep. 97:8-22).  Plaintiff has failed to provide even a scintilla of evidence to establish that Ms. Amos is a proper comparator.  Based on the evidence provided, I cannot determine whether Ms. Amos is outside of Ms. Cusworth's protected class, whether she indeed refused to test, and what, if any, adverse employment action she suffered.  I find that Ms. Amos is not a similarly situated employee for purposes of the *McDonnell Douglas* test.

As to Kim Reedy, Ms. Cusworth testified as follows:

> Q.  And Kim Reedy.  Do you know who she is?
> A.  No.
> Q.  Where did she work?
> A.  Miami.
> Q.  Do you know what she – well, is this description underneath the paragraph about her, or under her name, I'm sorry?
> A.  Yes.
> Q.  It says, "was informed that she was being tested by lead F/A, changed clothes in order to avoid agent."  What's – how did you know that?
> A.  I was informed that from another flight attendant.
> Q.  I'm sorry, did you say that you knew Kim Reedy?
> A.  No, I don't.
> Q.  Do you know that her age or race is?
> A.  No, I don't.
> Q.  Do you know what the outcome of her situation was?

A.  I believe she was terminated then reinstated.
Q.  And how do you know that?
A.  Rumor mill.

(Cusworth Dep. 97:23-98:21).  Ms. Cusworth provides this Court with an arbitration decision in

Ms. Reedy's case.  (ECF No. 60-9).  It appears that, upon arrival in Miami from a cross-country

flight, American selected Ms. Reedy for an alcohol test.  Instead of reporting for the test, Ms.

Reedy changed into civilian clothes, exited the aircraft, walked past the American representative,

and left the airport.  The next day, she contacted her supervisor, and told that individual that she

did not report for the test because she was afraid she would miss her ride to Key West.

American terminated her.  Ms. Reedy chose to submit to arbitration, and the arbitration panel

reinstated her.

Ms. Reedy is not a similarly situated employee.  First, Ms. Reedy's race is unknown, so I

cannot determine whether she is outside of Ms. Cusworth's protected class.  Unlike Ms.

Cusworth, Ms. Reedy did not take the alcohol test at all.  In any case, American subjected Ms.

Reedy to the same adverse employment action (i.e, termination) as Ms. Cusworth received, for

the same infraction (i.e., refusal to test).  More importantly, an arbitration panel reinstated Ms.

Reedy's employment after American terminated her.  Ms. Cusworth could have pursued an

arbitration claim, but chose not to do so.  This Court cannot speculate on how an arbitration

panel would have ruled, had Ms. Cusworth chosen to proceed with arbitration.  Based on the

evidence presented, I find that Ms. Reedy is not a proper comparator in this case.

Ms. Cusworth also relies on Ms. Lloyd's testimony regarding the three shy lung cases she

has seen, other than Ms. Cusworth, in her sixteen years at American.  (*See* Lloyd Dep. 14:9-16:5).

Ms. Lloyd identified the employees as "Paul, Patricia, and Pedro."  None of the employees were

flight attendants.  Ms. Lloyd recalled that one man was African American and the other was

"Latin." Ms. Lloyd only recollected that, in both cases, the "situation was resolved." Ms. Lloyd apparently did not recall anything about "Patricia."

The information on these three individuals is simply too vague for this Court to accept them as proper comparators. Based on the evidence presented, I cannot determine whether or not these individuals presented medical information to justify their inability to provide sufficient breath, and whether American took any adverse employment action against them.[6] I also cannot determine whether they, like Ms. Reedy, submitted to arbitration and were reinstated. Given the lack of evidence as to these individuals, I cannot find that they are proper comparators.

Ms. Cusworth fails to meet the third prong of the *McDonnell Douglas* test, and therefore fails to carry her burden of establishing a prima facie case of racial discrimination. Ms. Cusworth's failure to produce a comparator, however, "does not necessarily doom" her case. *Smith*, 644 F.3d at 1328. "[T]he *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Id*. Rather, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id*. (internal quotations omitted).

The record evidence, construed in the light most favorable to Ms. Cusworth, fails to reveal any circumstantial evidence that would allow a jury to infer intentional racial discrimination. This case does not present "a convincing mosaic of circumstantial evidence" suggesting racial discrimination.

---

[6] Like Ms. Lloyd, Dr. Anzalone also recalled three other shy lung cases besides Ms. Cusworth. (Anzalone Dep. 25:24–26:14). He recalled that in each case, the employee provided sufficient medical information to establish that he or she had a medical condition that precluded him or her from providing sufficient breath. Consequently, American took no adverse employment action against any of them.

The parties do not dispute that a computerized selection process randomly picked Ms. Cusworth for testing. The undisputed evidence shows that Ms. Lloyd complied with the requirements under 40 C.F.R. § 40.265(b) when administering the test. Both Ms. Lloyd and Ms. Cusworth testified that Ms. Lloyd explained to Ms. Cusworth how she had to breathe into the Alco Sensor after her first attempt did not result in an accurate reading.  Ms. Cusworth tried three times and did not provide sufficient breath in any of the three attempts.

The undisputed evidence shows that Ms. Cusworth had a follow-up examination with a licensed physician.  American admittedly failed to comply with 40 C.F.R. § 40.265(c), which required American to direct Ms. Cusworth "to obtain, *within five days*, an evaluation from a licensed physician" to determine whether a medical condition precluded her from providing sufficient breath for the alcohol test.  Ms. Cusworth did not have a follow-up examination until fifteen days after her alcohol test.  It appears that the delay was due to the unfortunate fact that Ms. Cusworth was, at the time, dealing with the situation of her ailing mother.  Ms. Cusworth obtained permission from her supervisor to care for her mother in Atlanta and then attend her funeral.  It appears from the evidence that Ms. Cusworth's supervisor was unknowledgeable about the shy lung procedure and did not promptly inform her of the five-day deadline.  There is no evidence, however, that the delay was related to any racial discrimination.  Additionally, there is no evidence that the delay was a factor in her termination, i.e., she was not fired because she did not submit to the evaluation within five days.

Further, the undisputed evidence shows that, after reviewing all the relevant medical information before them, two different physicians and one registered nurse came to the same conclusion:  Ms. Cusworth did not have a medical condition that could preclude her from

providing sufficient breath.  There is no evidence whatsoever that Ms. Lloyd, Dr. Anzalone, or Dr. Diaz made their findings based on racial animus.

Ms. Cusworth disputes American's contention that a "refusal to test" leads to an automatic termination.  In support, Ms. Cusworth relies on the arbitration panel's findings in Ms. Reedy's case.  According to the panel, a Rule No. 7 violation provides a "potential basis for an employee's immediate termination."  (ECF No. 60-9, at 3).  Termination is based on "the severity of the incident and the employee's record."  (*Id*. at 4).[7]  Whether American had some discretion in deciding whether to terminate Ms. Cusworth does not create a genuine issue of material fact as to whether American made its decision based on racial motivations; there is no evidence in the record to suggest any racial discrimination.  *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) ("We are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999))).

The undisputed evidence indicates that the individuals who determined that Ms. Cusworth's termination was appropriate based that decision on a review of her case, not on racial discrimination.  The undisputed evidence indicates that the Drug and Alcohol Department is in charge of termination decisions in cases of "refusals to test."  (Roig Dep. 32:5-10; Van Halm Dep. 5:11-20; 11:12-25).  Ms. Lalley and Ms. Rose, who work in the Drug and Alcohol Department, both testified that they made the decision to terminate Ms. Cusworth based on a review of Dr. Diaz's examination and American's applicable drug and alcohol policy.  (Lalley Dep. 25:3-26:11; Vela Dep. 37:3-38:2).  Ms. Vela then notified her supervisor of that

---

[7] Ms. Cusworth cites to other portions of the arbitration opinion, but those sections refer to drug, not alcohol, testing.

13

determination.  (Vela Dep. 37:7-38:2).  Neither Ms. Lalley nor Ms. Vela was aware of Ms. Cusworth's race when they made the decision to terminate her.  (Lalley Decl. ¶ 8; Vela Decl. ¶ 4).

Finally, American provides some statistical evidence to support its contention that terminations based on a "refusal to test" were not racially motivated.  From 2005 to 2010, American terminated fifteen flight attendants because of a "refusal to test."  Of those fifteen, eleven were White/Caucasian, three were African American (including Ms. Cusworth), and one was Hispanic.  The statistics do not reflect an overwhelming number of minority terminations, and further lend support to American's contention that Ms. Cusworth's termination was not based on racial discrimination.

I find that Ms. Cusworth fails to establish a prima facie case of racial discrimination or wrongful termination based on racial discrimination, and provides no other circumstantial evidence suggesting such discrimination.  Summary judgment is therefore proper on her discrimination and wrongful termination claims.[8]

## B.   **Retaliation Claim**

Ms. Cusworth claims that American terminated her in retaliation for her complaints about race and age discrimination.  A plaintiff establishes a prima facie case of retaliation by showing: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Holifield*, 115 F.3d at 1566.

---

[8] I note that the record indicates that American took some time to handle Ms. Cusworth's case, and its employees were not always adequately knowledgeable about proper procedures.  American's delays do not suggest any racial discrimination.  At most, they suggest possible inefficiencies or lack of knowledge in the proper processing of shy lung cases.  Perhaps these shortcomings may give rise to some other cause of action, but its does not support a racial discrimination claim.

A plaintiff does not need to prove the underlying claim of discrimination, which led to her complaint. *Tipton v. Can. Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989). Instead, the plaintiff's activity is protected "if she could reasonably form a good faith belief that discrimination in fact existed." *Id*. A plaintiff meets the causal link requirement by proving that "the protected activity and the negative employment action are not completely unrelated." *Holifield*, 115 F.3d at 1566. The plaintiff must also show that the employer was "actually aware of the protected expression at the time the employer took adverse employment action against the plaintiff." *Id*.

If a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate "a legitimate non-discriminatory reason for the adverse employment action." *Id*. If the employer does so, the plaintiff must then demonstrate that "the employer's proffered explanation is a pretext for retaliation." *Id.*

Ms. Cusworth testified that she never complained to American about age or race discrimination during her employment. (Cusworth Dep. 160:12–161:18.) Ms. Cusworth's first complaint of age or race discrimination was her EEOC charge, which she filed after American terminated her. Ms. Cusworth cannot meet the first or third prong of a prima facie retaliation claim. Ms. Cusworth's claim for retaliation fails because she did not engage in statutorily protected expression prior to her termination that would establish a causal connection between the two. *See Hopkins v. Saint Lucie Cnty. Sch. Bd*, 399 F. App'x 563, 566-67 (11th Cir. 2010) (finding that administrative complaint filed after adverse employment action cannot support prima facie retaliation claim).

### IV. CONCLUSION

For the reasons provided, it is **ORDERED and ADJUDGED** that Defendant American Airlines Inc.'s Motion for Summary Judgment is **GRANTED**. The Clerk is directed to **CLOSE** this case. All pending motions, if any, are **DENIED** as moot.

**DONE and ORDERED** in chambers at Miami, Florida, this 30th day of September 2011.

*Marcia G. Cooke*
_____
MARCIA G. COOKE
United States District Judge


Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*